IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 7213 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| NOLA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Defendant Nola, LLC, has filed an objection to Magistrate Judge Arlander Keys' Report and Recommendation dated February 19, 2008 (the "R&R"), recommending that defendant should be found "in civil contempt of court and that an appropriate fine should be imposed" for violating a series of orders intended to enforce a judgment in favor of plaintiff Wachovia Securities, LLC, in the sum of $1,387,355.39 entered by Judge Filip (who was previously assigned to this case) on February 16, 2006. Because the factual and procedural history recited by Magistrate Judge Keys in the R&R is not materially disputed, the court incorporates the R&R and attaches it to this memorandum opinion and order. For the reasons discussed below, the court denies defendant's objections to the R&R.

As mentioned above, defendant acknowledges the sorry procedural history of the post-judgment proceedings, but objects to Magistrate Judge Keys' conclusions that it "strung the plaintiff and this court along, when, by its own admission, it chose to designate Mr. Nichols, a member of the LLC, knowing that by designating 'a member of [the] LLC, rather than an employee or officer, [defendant's] ability to compel Mr. Nichols' actions [was] limited'" (quoting from defendant's response to plaintiff's motion for sanctions). Defendant also objects

to Magistrate Judge Keys' conclusion that it continuously mislead plaintiff and the court into believing that Mr. Nichols would be produced for his deposition, and that defendant never intended to have Mr. Nichols' deposition taken. Having carefully considered Magistrate Judge Keys' R&R, as well as the extensive record in this matter, this court concludes that Magistrate Judge Keys' could have reached no other conclusions and finds that his recommendation for a finding of civil contempt is fully supported by the record.[1]

Defendant's position can be distilled into a single proposition: that because it is a defunct company without assets, it was entitled to designate a witness to appear at a Rule 30(b)(6) examination pursuant to the post-judgment citation to discover assets over whom it had no power to compel his appearance at the examination. Although Judge Filip had suggested that Leon Greenblatt, the president of defendant's manager (Teltech Systems, Inc.), who had served as the corporate representative at the creditors' committee meeting in the underlying bankruptcy proceeding, should be tendered as defendant's 30(b)(6) representative, and although, in a February 14, 2008, order from which no objection has been taken, Magistrate Judge Keys (after more than a year of inexcusable delays) ordered defendant to produce Mr. Greenblatt for a deposition, defendant has insisted that it was under no obligation to produce anyone but James Nichols, a citizen of the United Kingdom over whom defendant ultimately claimed it had no control.

---

[1] The parties disagree about the standard of review by this court of Magistrate Judge Keys' R&R. Defendant seeks review under a de novo standard, citing Fed. R. Civ. P. 72, and plaintiff seeks review under a "clearly erroneous or contrary to law" standard under 28 U.S.C. § 636(b)(1)(A). Under either standard, however, this court would affirm Magistrate Judge Keys' conclusions and recommendation.

This court is startled by a statement in defendant's reply brief in support of its objection to the R&R (filed on May 1, 2008) that Mr. Greenblatt resigned as President of Teltech Systems, Inc. (defendant's manager) "sometime in the last year or so." If this is true, Mr. Greenblatt was President of defendant's manager, and therefore (as Magistrate Judge Keys' held) had the "sole and exclusive authority to run [defendant] and make investment decisions on its behalf," at the time the citation was originally served in March 2006, as well as on February 27, 2007, when Magistrate Judge Keys first ordered defendant to produce its designated witness (Mr. Nichols) for a deposition in Chicago.[2] Rather than producing the appropriate corporate representative, Mr. Greenblatt, defendant continued to designate Mr. Nichols, over whom it had no control and who defendant had every reason to believe would not travel to the United States to appear for the citation examination.

If this isn't "stringing along" the court and the plaintiff, nothing is. It has been 27 months since judgment was entered, 26 months since the citation was issued, two years since Judge Filip initially entered a rule to show cause on the citation, 15 months since Magistrate Judge Keys ordered defendant to produce a Rule 30(b)(6) designee for deposition in Chicago, one year since Judge Filip ordered Mr. Nichols to travel to Chicago for a deposition, 11 months since Magistrate Judge Keys issued a similar order and threatened to hold Nichols in contempt of court, and three months since Magistrate Judge Keys ordered defendant to produce Greenblatt for a deposition (none of which orders were appealed). Enough is enough.

---

[2]As noted above, neither that order nor any order entered by Magistrate Judge Keys (other than the February 19, 2008, R&R) has been objected to or appealed by defendant.

Both Illinois and federal law contemplate the possibility that a party risks a contempt citation for willful failure to comply with a citation to discover assets. See 735 Ill. Comp. Stat. § 5/2-1402; 28 U.S.C. § 1826(a). The remarkable patience displayed by both Judge Filip, the district judge who had previously been assigned to this case, and Magistrate Judge Keys, the magistrate judge to whom Judge Filip assigned the responsibility to enforce the citation to discover assets, has been rewarded by defendant's obstinance, dissembling, and inordinate and willful delay, resulting in a unacceptable waste of judicial resources. Accordingly, the court denies defendant's objection to Magistrate Judge Keys' February 19, 2008, R&R, and confirms his recommendation that defendant is in civil contempt of this court. In addition to the sanctions previously imposed by Magistrate Judge Keys, defendant is hereby fined the sum of $500.

The court notes that this entire matter is probably moot at this point. Although the court set the case for ruling on today's call, plaintiff failed to appear. Defendant's counsel informed the court that Mr. Greenblatt had in fact recently appeared at a citation examination (although he disclaimed appearing as a Rule 30(b)(6) witness because he was no longer employed by defendant). Plaintiff's failure to appear at today's hearing seems to confirm the fact that defendant is defunct and without any resources to pay a fine or the judgment, and that the entire exercise of appealing Magistrate Judge Keys' report and recommendation was unnecessary and a further waste of judicial resources.

**ENTER:** June 5, 2008

_____
**Robert W. Gettleman
United States District Judge**

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 05 C 7213 |
| v. | ) | |
| | ) | Judge Mark Filip |
| | ) | |
| | ) | |
| NOLA, LLC, | ) | Magistrate Judge |
| | ) | Arlander Keys |
| Defendant. | ) | |

TO: THE HONORABLE MARK FILIP
    UNITED STATES DISTRICT JUDGE

**REPORT AND RECOMMENDATION**

Plaintiff Wachovia Securities, LLC ("Wachovia"), was awarded a $1.38 million judgment against Defendant, NOLA, LLC ("NOLA"). In an attempt to exercise its rights as a judgment creditor, Plaintiff seeks to conduct a citation examination to discover NOLA's assets, pursuant to Federal Rule of Civil Procedure 30(b)(6). NOLA designated James Nichols, a citizen of the United Kingdom, as its corporate representative. Mr. Nichols, however, has not appeared and NOLA has failed to appoint anyone in his place, delaying any progression of the examination for more than a year. Plaintiff filed a motion seeking sanctions against NOLA and Mr. Nichols because of their failure to comply with this Court's order that Mr. Nichols appear for his deposition.

The Court issued a Memorandum Opinion and Order on February 14, 2008 resolving the following issues: whether sanctions should

5

be issued against Mr. Nichols for his failure to appear for the court-ordered citation examination; whether NOLA should be required to appoint another corporate representative; and whether NOLA and Mr. Nichols, jointly and severally, should be required to pay Wachovia's attorney's fees and costs for failure to comply with the court-ordered discovery.  Plaintiff also seeks a contempt finding against NOLA.  Because the parties have not consented to the Court's jurisdiction for all matters in the case, the Court does not have contempt powers over the parties. Therefore, the Court is issuing its Report and Recommendation to the District Judge on Plaintiff's motion to hold NOLA in contempt.  For the reasons set forth below, the Court recommends that NOLA be held in contempt for its wilful disregard of the Court's orders.

**Factual and Procedural History**

On February 16, 2006, a $1,387,355.39 judgment was entered against NOLA and in Wachovia's favor by Judge Filip, the district judge to whom this case was assigned.  In an attempt to discover assets, Wachovia served NOLA with a Citation to Discover Assets. However, before proceeding with the citation, the parties entered settlement negotiations, which ultimately proved futile. Wachovia then proceeded under the citation, requesting that NOLA identify a corporate representative to provide discovery on the Citation.  On January 3, 2007, in response to Wachovia's 30(b)(6)

6

request, NOLA identified James Nichols, a resident of the United Kingdom, as its corporate representative. In an order dated February 27, 2007, the Court ordered NOLA to produce Mr. Nichols for a deposition in Chicago and denied Plaintiff's Motion for Rule to Show Cause and for Sanctions. On May 9, 2007, NOLA's counsel, Gregory James Jordan, informed the Court that NOLA had been unable to produce Mr. Nichols in the United States for a deposition. The Court then ordered that Mr. Nichols sit for a deposition by June 15, 2007; however, NOLA again failed to produce Mr. Nichols.

On June 27, 2007, Mr. Jordan appeared before the Court for a scheduled motion hearing on Plaintiff's Second Motion for Rule to Show Cause and for Sanctions. Mr. Jordan informed the Court that he was making his best efforts to get Mr. Nichols to sit for his deposition. The Court ordered Plaintiff's motion for sanctions to be held in abeyance and ordered that Mr. Nichols sit for his deposition by August 3, 2007. Then, at a scheduled status hearing before the Court, three days after Mr. Nichols was to sit for his deposition, Mr. Jordan admitted that he could not produce Mr. Nichols.

## Legal Standard

Illinois law specifically provides that failure to comply with a citation to discover assets may constitute contempt of court. 735 Ill. Comp. Stat. § 5/2-1402. Additionally, Rule

7

37(d) of the Federal Rules of Civil Procedure gives Courts the authority to sanction a party failing to attend a citation examination. Inherent in that authority is the power of the Court to hold the non-compliant party in contempt of court. Contempt may either be civil or criminal in nature. Civil contempt is authorized by 28 U.S.C. § 1826(a). It gives "[a] district court broad discretion to fashion an appropriate coercive remedy in a case of civil contempt, based on the nature of the harm and the probable effect of alternative sanctions." *Anthony Marano Co. v. A. Stallone, Inc.*, No. 00-C-8019, 2002 WL 31875471, at *7 (N.D.Ill. Dec. 24, 2002) (quoting *Cannon v. Loyola University of Chicago*, 676 F.Supp. 823, 828 (N.D.Ill. 1987)). Under 28 U.S.C. § 1826(a), "[w]henever a witness in any proceeding before or ancillary to any court ... refuses without just cause shown to comply with an order of the court to testify ..., the court ... may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony ...." Additionally, the period of confinement shall not exceed the life of the court proceeding or eighteen months. *Id*. Moreover, a court may also impose fines, as long as its purpose is to "modify[ ] the contemnor's behavior to conform to the terms required in the [court's] order." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994) (quoting *Hicks on Behalf of Feiock v. Feiock*, 485 U.S.

624, 635 (1988)). Furthermore, sanctions may include attorney's fees. *In re Establishment Inspection of Microcosm*, 951 F.2d 121, 121 (7th Cir. 1991).

On the other hand, criminal contempt, authorized by 18 U.S.C. § 401, authorizes the court "to punish by fine or imprisonment, or both, at its discretion, ... [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." When criminal contempt is committed, FED.R.CRIM.P. 42(a)(1) requires notice prior to prosecution. This notice must "(a) state the time and place of the trial; (b) allow the defendant a reasonable time to prepare a defense; and © state the essential facts constituting the charged criminal contempt and describe it as such." FED.R.CRIM.P. 42. In addition, a conviction for criminal contempt requires a showing that the violation was willful. *In re Betts*, 927 F.2d 983, 986 (7th Cir. 1991). Moreover, "[a] standard of reasonable doubt is applied and a jury trial is permitted for some forms of criminal contempt." *Anthony Marano Co.*, 2002 WL 31875471, at *6.

**Discussion**

Implicit in designating a Rule 30(b)(6) representative, who is not an employee or managing agent, is that the witness will be able *and* willing to answer questions relating to the information sought. Federal Rule of Civil Procedure 30(b)(6) provides:

> A party may in the party's notice and in a subpoena
> name as the deponent a public or private corporation

9

> for a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who ***consent*** to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify....

(Emphasis added). Moreover, the Advisory Committees Notes to the 1970 Amendment pertaining to Rule 30(b)(6), explains that an organization in response to a citation to discover assets shall "name one or more of its officers, directors, or managing agents or other persons ***consenting*** to appear and testify on its behalf with respect to matters known or reasonably available to the organization. The organization may designate persons other than officers, directors, and managing agents, but ***only with their consent***." (Emphasis added). At the same time, a corporation's lack of control over potential designees does not eliminate the corporation's duty to designate a Rule 30(b)(6) witness altogether. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007) (Noting that the duty to designate a corporate representative is "not negated by a corporation's alleged lack of control over potential Rule 30(b)(6) deponents.") It is well settled that corporations must also make a "conscientious good faith effort" when making its designation. *Sec. and Exch. Comm'n v. Buntrock*, 217 F.R.D. 441, 444 (N.D.Ill. 2003) (quoting *Buycks-Roberson v. Citibank Federal*

*Sav. Bank*, 162 F.R.D. 338, 342 (N.D.Ill. 1995)); *see also Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (quoting *Bank of New York v. Meridien BIAO Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997)). In sum, the rule requires a company to do the following: (1) to designate someone it has control over, such as an employee, or a consenting individual, whom the company has prepared to answer questions relating to the information sought by the deposing party; (2) where one person is not capable of answering all related questions, a corporation must designate as many individuals as necessary to complete the relevant inquiry; and (3) Regardless of how many representatives are designated, the company must apply good faith principles in its efforts to make a designation. NOLA, failed to fulfill the rule's requirements on all counts.

NOLA responded to Plaintiff's Rule 30(b)(6) request by designating a foreign national who resides in the United Kingdom. Judge Filip ordered NOLA to produce its designee for a deposition by May 16, 2006. Defendant failed to produce Mr. Nichols by that date. On May 9, 2007, almost one year later, the parties appeared before this Court and counsel for Defendant, Mr. Jordan, informed the Court that it was still trying to get Mr. Nichols to sit for his deposition. The Court ordered that Mr. Nichols sit for a deposition by June 15, 2007. On June 27, 2007, Mr. Jordan, once again, informed the Court that NOLA was still trying to get

11

Mr. Nichols to sit for a deposition. Then finally, on August 6, 2007, three days after the Court's final deadline and over sixteen months after the filing of Plaintiff's Citation to Discover Assets, Defendant revealed that it would not be producing Mr. Nichols because he apparently refused to serve as a corporate representative. (*See* Def.'s Resp. to Mot. for Sanctions and for an Order Requiring NOLA to Designate Corporate Representative to Appear for Citation Examination, 4.)

For months, NOLA strung the plaintiff and this Court along, when, by its own admission, it chose to designate Mr. Nichols, a member of the LLC, knowing that by designating "a member of [the] LLC, rather than an employee or officer, NOLA's ability to compel Mr. Nichols' actions [was] limited." (Def.'s Resp. to Mot. for Sanctions, 4.) NOLA gave this Court false assurances that it would produce Mr. Nichols, while all along Mr. Nichols not only did not consent to the deposition, but refused to participate, which ultimately delayed this examination for more than a year. Furthermore, in its response to Plaintiff's motion for sanctions against NOLA for failing to produce its corporate representative, NOLA argued that the Court's hands were tied and that it could not hold Mr. Nichols (who, to the Court's knowledge, is not represented by the same counsel) in contempt, because the Court lacked the necessary jurisdiction over Mr. Nichols. (Def.'s Resp. to Mot. for Sanctions, 2-4.) In its recent Memorandum

12

Opinion and Order, the Court agreed that it does not have personal jurisdiction over Mr. Nichols. It is quite telling, however, that NOLA even put forth an argument to defend Mr. Nichols, who according to NOLA, blatantly defied multiple orders by the Court and who, for over a year, refused to comply with NOLA's own request to serve as corporate representative. NOLA then argued that it too should not be sanctioned because it complied with Rule 30(b)(6) by designating <u>a</u> representative and it has been present at all scheduled court appearances. NOLA essentially asked this Court to ignore the fact that Mr. Nichols, the representative it chose, not only refused to participate, but that he also never actually consented to represent the corporation in the Rule 30(b)(6) proceedings. (*See* Def.'s Resp. to Mot. for Sanctions, 4). However, a corporation cannot simply designate any representative who possesses the relevant information the deposing party seeks and wash its hands of any future responsibility. In other words, Rule 30(b)(6) does not allow a corporation to designate a corporate representative, then throw up its hands when the designee refuses to participate, then claim it has done its part. NOLA misled Plaintiff and this Court, wasting judicial resources and causing Plaintiff to incur

additional costs and attorney's fees, when there was an obvious available alternative.³

Plaintiff alleges, and it is uncontroverted by Defendant, that NOLA's manager is a shell company called Teletech Systems, Inc., in which Leon Greenblatt serves as the sole officer, director and employee. It is also not disputed that NOLA's articles of organization vests its manager, who essentially is Mr. Greenblatt, with the sole and exclusive authority to run the company and make investment decisions on its behalf. Furthermore, NOLA chose Mr. Greenblatt, who resides in this judicial district, to serve as its corporate representative at the creditors committee meeting in the underlying bankruptcy

---

³The Court notes that at a hearing on January 31, 2007, Judge Filip brought to NOLA's attention potential difficulties surrounding the appointment of a foreign national as its 30(b)(6) witness, and noted NOLA's other, and what seemed to be, the more favorable option:
> If there is somebody here in Chicago who has appeared before, I realize that a 30(b)(6) type situation, a person in one setting isn't always and everywhere the appropriate person in another, but if he has spoken on behalf of the company to a creditors committee, that's a pretty big deal and it's – it would be at least less likely than more likely that somebody who had that facility with the company's financial picture couldn't speak to financial circumstances at a citation proceeding like this. So it probably would make the most sense for Mr. [Leon] Greenblatt to do this. And I'm not prejudging any of your legal positions, but it would strike me as anomalous that on a case in which judgment was entered here in Chicago in a proceeding in a Chicago court where the appearances have been filed in Chicago, that you could designate somebody who is in England or Guam or, in you know, it could be Timbuktu, that seems anomalous, and probably the easiest way to do this is to have Mr. Greenblatt speak to the issues as opposed to having both sides incur the expenses of briefing whether or not somebody can be designated in a foreign country, because if you could, you literally could designate somebody in, you know, SRI Lanka, Madagascar. It seems implausible that that would be the rule.

(Transcript of Record, 5-6, Jan. 31, 2007.)

proceeding. (*See* Transcript of Record before Judge Filip, Jan. 31, 2007, at 4.)

Notwithstanding these facts, NOLA insisted, over the strenuous objections of Wachovia, that "[t]he Court [did not] have power to compel [Mr. Nichols] to come to Chicago...." (Rule to Show Cause Hr'g Tr. 8, before Judge Keys, Feb. 26, 2007.) In open court, NOLA's attorney expressed its position as follows:

> ... Mr. Nichols is knowledgeable with regard to NOLA, but I don't want to raise the expectations that anybody can see this as anything other than an attempt by Wachovia to try to punish individuals for the fact that there's a breach of contract award .... Mr. Nichols, who lives in the United Kingdom, would like to have the farce that is the citation examination conducted by telephone, or if they want to come to the United Kingdom he'll do it there.

(Rule to Show Cause Hr'g Tr. 3.) Annoyed that Plaintiff sought a Rule 30(b)(6) examination, NOLA designated Mr. Nichols, knowing that Wachovia would have little or no recourse if he refused to get involved. For instance, while responding to one of the cases Plaintiff relied on, NOLA noted the following: "[the Court] could sanction NOLA if Mr. Nichols doesn't come to the United States, and since we all know that NOLA doesn't have any assets, that really doesn't get [Wachovia] very far." (Rule to Show Cause Hr'g Tr. 7.) The Court ultimately rejected NOLA's argument and ordered Mr. Nichols to be deposed in Chicago. Having not prevailed in its attempt to persuade the Court to order the deposition of Mr. Nichols outside the country, NOLA then

15

continued to mislead the plaintiff and the Court into believing that Mr. Nichols would be produced for his deposition. As hindsight would reveal and subsequent events have shown, however, it appears that NOLA never intended to have Mr. Nichols' deposition taken.

## Recommendation

As a result of the actions of NOLA, as described above, Plaintiff and this Court have expended inordinate resources and time in pursuing a course of action which, the Court believes, NOLA knew would be futile. In its February 14, 2008 Memorandum Opinion and Order, the Court ordered that NOLA produce Mr. Greenblatt for a deposition, and that, if Mr. Greenblatt is unable to answer any questions regarding NOLA's finances, then NOLA must designate someone else to do so. The Court also awarded to Plaintiff the attorney's fees and costs it incurred as a result of having to brief the issues involved herein and for its appearances before this Court. Considering the foregoing, the Court is of the opinion that NOLA should also be found in

civil contempt of court and that an appropriate fine should be imposed. The Court so recommends.[4]

Date: February 19, 2008  RESPECTFULLY SUBMITTED:

_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

---

[4]Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Marvin E. Aspen. *See* FED. R. CIV. P. 72(b); 28 U.S.C. 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).